1  LARS T. FULLER (No. 141270)
   SAM TAHERIAN (No. 170953)
2  JOYCE K. LAU (No. 267839)
   THE FULLER LAW FIRM, P.C.
3  60 No. Keeble Ave.
   San Jose, CA 95126
4  Telephone: (408)295-5595
   Facsimile: (408) 295-9852
5  Lars@fullerlawfirm.net

6  Attorneys for Debtor

7

8

9

10                 **UNITED STATES BANKRUPTCY COURT**

11                **NORTHERN DISTRICT OF CALIFORNIA**

12                      **SAN JOSE DIVISION**

13  In re                              CASE NO. 21-50915-SLJ

14  PIERCE CONTRACTOR'S, INC.          **DECLARATION OF DEBTOR IN**
                                       **SUPPORT OF MOTION TO ENCUMBER**
15                                     **REAL PROPERTY**

16              Debtor                 Chapter 11
                                       [Subchapter V]
17
                                       Date:    None Set
18                                     Time:    None Set
                                       Court:   Telephone or Video Only***
19

20       I, Richard Pierce declare and say:

21       1.    I am the Debtor herein having caused to be filed the herein case on July 7, 2021.

22       2.    Debtor is the title holder of real property at 194 Lantz Dr., Morgan Hill, CA 95037

23  [hereinafter "Property"].

24       4.    The Property is delinquent in property taxes for tax year 2020/2021 in the amount of

25  $60,180.03.

26

27

28                                          1
                   Declaration of Debtor in Support of Motion to Encumber Real Property

5.      On or about May 2, 2019 I, as CEO of Debtor and individually, executed a promissory note ("1st Note") secured by deed of trust in favor of Sassan Raissi, a sole individual, as to an undivided 600/1,429,000 interest; Jerry Kiachian, a married man as is sole and separate property, as to an undivided 629,500/1,429,000 interest; Mohsen Keyashian, a married man as his sole and separate property, as to an undivided 200,000/1,429,000 interest ("Lender" hereinafter). The original balance of the 1st Note was $1,429,000. The Note provided for interest at 10.99% per annum payable in 24 partially amortized installments of $13,253.94/month. The Note further provided for a default interest rate of 6.00% per annum, in addition to the note rate of 10.99%. The Note further provided for a balloon late charge of $142,900.00.   The Note further provided for, at the option of the beneficiary, compounded interest on any insufficient payment. A true and correct copy of the 1st Note is attached hereto as Exibit"1".

6.      On May 8, 2019 I, in my capacity of CEO of Pierce Contractor's Inc. and individually as co-borrower, executed before a notary public a Deed of Trust ("1st Trust Deed" hereinafter) in favor of Lender  recorded against the Property on May 24, 2019 as Document No. 24188236 in the Official Records of Santa Clara County.  A true and correct copy of the 1st Trust Deed (without riders) is attached hereto as Exhibit "2".

7.      Pursuant to the Proof of Claim No. 2-1 filed on Feb. 20, 2020 in Debtor's prior Chapter 11 case, I am informed and believe that the balance of the 1st Note was $1,614,709.91 as of  the petition date of the prior case. A true and correct copy of POC 2-1 (without attachments) is attached hereto as Exhibit "3".

8.      On June 21, 2021, Lender published a Notice of Trustee's Sale indicating that the unpaid balance is $2,117,029.61.  A true and correct copy of the Notice of Trustee's sale is attached hereto as Exhibit "4".

FULLER LAW FIRM, P.C.
60 N. KEEBLE AVE
SAN JOSE, CA 95126
(408) 295-5595

9. On or about May 8, 2019, I, as sole director of Debtor, executed an Installment Note ("2nd Note" hereinafter) secured by a Deed of Trust ("2nd Trust Deed" hereinafter) in favor of Richard W. Joyce and Yong Cha Joyce recorded against the Property on May 24, 2019 as Document No. 24188237 in the Official Records of Santa Clara County. The original balance of the 2nd Note was $470,000.

10. Pursuant to the Proof of Claim No. 6-1 filed on Apr. 1, 2021 in Debtor's prior case, I am informed and believe that the balance of the 2nd Note was $487,799.84 as of that date. The 2nd Note provides for payments of interest in the amount of $2,154.16/month at the rate of 5.5% per annum.

11. Pursuant to their proof of claim, the balance of the 2nd Note was $487,799.84 as of Jan. 31, 2020, the time of the filing of the prior petition. I estimate that the current balance is $526,575.

12. On or about May 8, 2019, I, in my capacity as sole Director of Debtor, executed an Installment Note ("3rd Note" hereinafter) secured by a Deed of Trust ("3rd Trust Deed" hereinafter) in favor of Richard W. Joyce and Yong Cha Joyce recorded against the Property on May 24, 2019 as Document No. 24188238 in the Official Records of Santa Clara County. The original balance of the 3rd Note was $300,000.

13. Pursuant to the Proof of Claim No. 7-1 filed on Apr. 1, 2021, I am informed and believe that the balance of the 3rd Note was $311,361.68 as of Jan. 31, 2020. I estimate that the current balance is $336,112.

14. My wife and father-in-law died in a plane crash in early 2017.

15. My children, Brandon and Bradley have received a wrongful death recovery. The terms of the settlement are confidential. However, they have in excess of $900,000 in available cash and have agreed to contribute money to fund a plan and facilitate a re-finance of the Property.

1

16.　　Yosemite Financial has agreed to extend a new private money loan secured by the

2

property.　A true and correct copy of the term sheet is attached as Exhibit 5. The Yosemite

3

Financial loan represents a 65% loan to value ratio based on a valuation of $1,750,000.

4

I declare under penalty of perjury under the laws of the United States of America that the

5

foregoing is true and correct.

6

7

DATED: July 7, 2021　　　　　　　　/s/ Richard Pierce

8

RICHARD PIERCE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Declaration of Debtor in Support of Motion to Encumber Real Property

FULLER LAW FIRM, P.C.
60 N. KEEBLE AVE
SAN JOSE, CA 95126
(408) 295-5595

# EXHIBIT 1

# PROMISSORY NOTE SECURED BY DEED OF TRUST
## (This Note contains an Acceleration Clause)
### PARTIALLY AMORTIZED BALLOON PAYMENT NOTE
### 1-4 RESIDENTIAL NON-OWNER OCCUPIED PROPERTY
### BUSINESS PURPOSE LOAN

Loan Number:
Loan Amount: $1,429,000.00

Property Address: **194 LANTZ DRIVE, MORGAN HILL, CA 95037**
BURLINGAME, California

MAY 2, 2019

In installments as herein stated, for value received, PIERCE CONTRACTORS, INC., A CALIFORNIA CORPORATION AND RICHARD PIERCE, the undersigned Borrower(s), promise to pay to EXHIBIT D, the Beneficiary, or order, at a place that may be designated by the Beneficiary, the sum of: $1,429,000.00, ONE MILLION FOUR HUNDRED TWENTY NINE THOUSAND DOLLARS exactly with interest from the date of funding on the unpaid principal at the rate of 10.99% percent per annum, payable in 24 partially amortizing installments of $13,253.94 each, beginning on 07/01/2019, and continuing MONTHLY ON THE FIRST DAY OF EACH MONTH thereafter until maturity, 06/01/2021, at which time all sums of principal and interest then remaining unpaid shall be due and payable in full. Interest shall be calculated on a 360 day year and on an ordinary annuity calculation basis. At the option of the Beneficiary, each payment shall be credited first on interest then due, then on late charges, then on advances, then on fees and the remainder on principal; and interest shall thereupon cease upon the principal so credited.

**Default of payment.** Upon default in any payment of any installment, then the balance of this obligation shall become due immediately at the option of the Holder hereof. Principal, interest, and all funds due Beneficiary payable in lawful money of the United States of America. Except where federal law is applicable, this Note shall be construed and enforceable according to the laws of the State of California for all purposes and any terms herein inconsistent therewith are hereby modified to conform to said law at the time of signing of these loan documents. Time is of the essence for each and every obligation under this Note.

---

**THE FOLLOWING PROVISIONS MAY RESULT IN THE COMPOUNDING OF INTEREST ON YOUR LOAN**

At the option of the Beneficiary, if any payment should be insufficient to pay the interest then due, the balance of interest remaining shall be added to principal and will bear interest at the Note rate as the principal.

At the option of the Beneficiary, if any principal and/or interest installments, late charges, advances and/or costs should be repaid through or by any forbearance, bankruptcy plan or similar repayment plan or foreclosure, the total sum of these amounts will bear interest at the Note rate from the date due or advanced until the date repaid.

---

If this Note is not paid when due, the Borrower(s) promise to pay, in addition to the principal and interest due under this Note, all costs of collection and any reasonable attorneys' fees incurred by the Beneficiary thereof on account of such collection, whether or not suit is filed hereon. Each Borrower consents to renewals, replacements, and extensions of time for payment hereof before, at, or after maturity; consents to the acceptance of security for this Note and waives demand, protest and any applicable statute of limitations. Advances shall bear interest at the interest rate stated in the note or the "Default" interest, whichever is higher, from date of advance until date paid in full.

**Payment late charge.** If any installment due hereunder is delinquent more than 10 days, the Borrower to this Note agrees to pay a late charge on each installment of $5.00 or 10.00% of the delinquent payment, whichever is larger. All late charges are to be paid immediately on demand.

Page 1 of 3

Case 20-50182   Claim 2-1   Filed 02/20/20   Desc Main Document   Page 8 of 17

**Balloon late charge.** In addition, if any balloon payment is delinquent more than TEN days, the borrower will be charged $142,900.00 as liquidated damages.

Borrower acknowledges that its failure to make timely payments under this Note will cause Lender to incur additional expenses in servicing and processing the Loan and that it is extremely difficult and impractical to determine those additional expenses. Borrower agrees that the late charges provided for in this Note represent fair and reasonable estimates taking into account all circumstances existing on the date of this Note, of the additional expenses Lender will incur by reason of such late payments. The late charges are payable in addition to, and not in lieu of, any default interest provided below.

**Return check charge.** Borrower and Beneficiary agree that it would be difficult to determine the actual damages to the Beneficiary or Beneficiary's agent for the return of an unpaid check provided by Borrower. It is hereby agreed that Borrower will pay the sum equal to 5% of the amount returned or $25.00, whichever is greater. However, in any event the maximum charge for an unpaid check is not to exceed the sum of $35.00. This amount is in lieu of any statutory monetary penalty, if any; however, Beneficiary does not waive any other rights that may be awarded under any statute. Should Borrower have two or more returned checks, for any reason, during the life of the loan, Beneficiary may demand that Borrower make payments in the form of cash, cashiers check or money order.

**Right to assign.** The holder of this Note shall have the right to sell, assign, or otherwise transfer, either in part or in its entirety, this Note, the Deed of Trust, and other instruments evidencing or securing the indebtedness of this Note to one or more investors without Borrower's consent.

**Prepayment penalty.** The principal and accrued interest on this loan may be prepaid in whole or in part at any time without penalty, however, Beneficiary is guaranteed to receive a minimum of **6 months** interest based on the original principal balance together with any interest paid or due in escrow.

**Default interest.** Should Borrower default on any terms and conditions of this loan, Borrower shall pay a default interest rate in the amount 6.00% per annum, in addition to the current rate of 10.99%, based on the principal balance and on all outstanding advances and advances to be made after default has occurred. Default interest shall commence as of the date of the default and shall continue until such time default has been cured or loan has been paid off.

**Advancing Fee.** For any advances made to senior encumbrances and/or obligations to protect the Beneficiary's interest in this Note, there will be an advancing fee equal to three (3%) of the amount so advanced subject with a minimum fee of fifty dollars ($50) per advance (per lender). Advances will bear interest at the same rate that is charged on the principal of this Note from the date of advancement to such date when all monies are paid in full in the form of cash and/or certified funds. ALL ADVANCES TO BE REPAID AT NOTE RATE OR DEFAULT INTEREST RATE, WHICHEVER ONE IS HIGHER, FROM DATE OF ADVANCE UNTIL DATE FUNDS ARE RECEIVED BY BENEFICIARY.

**Oral Representations.** The undersigned Borrower hereby states that the Beneficiary, their representative(s) nor any employee RUSHMYFILE, INC. has alluded to, given actual details(s) or discussed other terms of this loan other than what has been agreed to in writing.

**SEVERABILITY; ENTIRE AGREEMENT; AMENDMENTS.** The parties intend that the provisions of this Instrument and all other Loan Documents, including the Deed of Trust securing the indebtedness, shall be legally severable. If any term or provision of this Instrument or any other Loan Document, including the Deed of Trust securing the indebtedness, be determined to any extent by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Instrument or of such other Loan Document, including the aforesaid Deed of Trust, shall not be affected thereby and each term and provision shall be valid and be enforceable to the fullest extent permitted by law. This Instrument and the aforesaid Deed of Trust contains the entire agreement among the parties as to the rights granted and the obligations assumed in this Instrument. This Instrument may not be amended or modified except by a writing signed by the party against whom enforcement is sought.

Page 2 of 3

**Binding.** This Note and all of the covenants, promises and agreements contained in it shall be binding on and insure to the benefit of the respective legal and personal representatives, devisees, heirs, successors, and assigns of the Borrower and the Beneficiary.

**Acceleration clause.** This Note is secured by a First Deed of Trust of even date herewith which contains the following provision:

In the event of sale or transfer, conveyance or alienation of said real property, or any part thereof, or any interest therein, whether voluntary or involuntary (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred), Beneficiary shall have the right of acceleration, at its option, to declare the Note secured by the Deed of Trust, irrespective of the maturity date expressed therein, and without demand or notice, immediately due and payable. No waiver of this right shall be effective unless it is in writing. Consent by the Beneficiary to one such transaction shall not constitute waiver of the right to require such consent to succeeding transactions.

This Note is secured by a Deed of Trust to **SUPERIOR LOAN SERVICING**, as Trustee.

PIERCE CONTRACTORS, INC., A CALIFORNIA CORPORATION, BY RICHARD PIERCE, CEO – Borrower /Date 5/8/19

RICHARD PIERCE – Co-Borrower /Date 5/8/19



INTENTIONALLY BLANK

DO NOT DESTROY THIS NOTE: When paid, this Note, with Deed of Trust securing same, must be surrendered to the Trustee for cancellation before reconveyance or Trustee's Deed. This loan was originated by RUSHMYFILE, INC., License No. 01893519, NMLS No. 396905, a company licensed by the Bureau of Real Estate (formerly the Department of Real Estate).

Page 3 of 3

Case 20-50182     Claim 2-1     Filed 02/20/20     Desc Main Document     Page 10 of 17

# EXHIBIT 2

**This document was electronically submitted to Santa Clara County for recording**

RECORDING REQUESTED BY:
First American Title
5914945

**24188236**

Regina Alcomendras
Santa Clara County - Clerk-Recorder
05/24/2019 03:06 PM

Titles: 2    Pages: 19
Fees: $104.00
Tax: $0.00
Total: $104.00

AND WHEN RECORDED
MAIL TO:
Superior Loan Servicing
24013 Ventura Blvd., Ste 200
Calabasas, CA  91302

*THIS SPACE FOR RECORDER'S USE*

---

DEED OF TRUST

(Please fill in document title(s) on this line)

1 ☐ Exempt from fee per GC27388.1.  Recording is subject to the imposition of documentary transfer tax; or,

2 ☒ Exempt from fee per GC27388.1.  Document is being recorded in connection with a concurrent transfer that is subject to the imposition of documentary transfer tax; or,

3 ☐ Exempt from fee per GC27388.1. Document transfers real property that is a residential dwelling to an owner-occupier; or,

4 ☐ Exempt from fee per GC27388.1.  Document is being recorded in connection with a concurrent transfer of real property that is a residential dwelling to an owner-occupier; or,

5 ☐ Exempt from fee per GC27388.1.  The $225.00 fee cap has been reached for this transaction; or,

6 ☐ Exempt from the fee per GC 27388.1 (a) (1).  Recording is not related to real property

THIS PAGE ADDED TO PROVIDE SENATE BILL 2 EXEMPTION INFORMATION
(Additional recording fee applies)

RECORDING REQUESTED BY

WHEN RECORDED MAIL TO

Superior Loan Servicing
24013 Ventura Blvd., Suite 200,
Calabasas, CA 91302
Loan Number: RMF4024237

Property Address:
194 LANTZ DRIVE
MORGAN HILL, CA 95037

APN: 712-04-100

SPACE ABOVE THIS LINE FOR RECORDERS USE

# DEED OF TRUST
## AND ASSIGNMENT OF RENTS

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19, 20 and 22. Certain rules regarding the usage of words used in this document are also provided in Section 15.

(A)  "**Security Instrument**" means this document, which is dated MAY 2, 2019, together with all Riders to this document.

(B)  "**Borrower**" is PIERCE CONTRACTORS, INC., A CALIFORNIA CORPORATION. Borrower is the trustor under this Security Instrument. Borrower's mailing address is: 18605 ARGUELLO AVENUE, MORGAN HILL, CA 95037.

(C)  "**Lender**" is EXHIBIT D. Lender is the beneficiary under this Security Instrument.

(D)  "**Trustee**" is SUPERIOR LOAN SERVICING, to whom Borrower irrevocably grants, transfers and assigns property, in Trust, with Power of Sale.

(E)  "**Note**" means the promissory note signed by Borrower and dated MAY 2, 2019. The Note states that Borrower owes Lender ONE MILLION FOUR HUNDRED TWENTY NINE THOUSAND DOLLARS exactly (U.S. $1,429,000.00) plus interest.

(F)  "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."

(G)  "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H)  "**Riders**" means all riders to this Security Instrument that are executed by Borrower. The following riders are to be executed by Borrower : Assignment of Rents and Profits; Security Agreement and Protection of Lenders' Security Rider.

(I)  "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J)  "**Community Association Dues, Fees and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K)  "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

Page 1 of 16

(L) **"Escrow Items"** mean those items that are described in Section 3.

(M) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5 for (i) damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the Property, (iii) conveyance in lieu of condemnation or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) **"Periodic Payment"** means the regularly scheduled amount due for (1) principal and interest under the Note, plus (2) any amounts under Section 3 of this Security Instrument.

(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (a) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (b) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of **SANTA CLARA**, which currently has the address of **194 LANTZ DRIVE, MORGAN HILL, CA 95037** and fully described as:

SEE LEGAL DESCRIPTION ATTACHED

APN # 712-04-100

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and nonuniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity or (d) Electronic Funds Transfer. Additionally, Lender can require payment due to senior encumbrances, including insurance, in the forms listed above.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment(s) or partial payment(s) if the payment(s) or partial payments are insufficient to bring the Loan current. Lender may accept any payment(s) or partial

payment(s) insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment(s) or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment(s) to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to any amounts under the Note owed by Borrower. Lender shall decide how to apply funds. Should a Notice of Default be of record, funds may be applied and the Notice of Default shall remain valid. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.  **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: First - interest due under the Note; Second - principal due under the Note; Third - amounts due under Section 3. However, should advances be made under this Deed of Trust, Lender has sole discretion as to the distribution as to how payments shall be applied when received. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.  **Funds for Escrow Items.** Should Lender require, borrower or his successor shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 9. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 8 and pay such amount and Borrower shall then be obligated under Section 8 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (1) sufficient to permit Lender to apply the Funds at the time specified under RESPA and (2) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  **Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust including borrower's covenants to make payments when due. Additionally, borrower shall pay all taxes, assessments, charges, including garbage billings, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given (excluding Deed of Trust liens, which need no notice), Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.  **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (1) a one-time charge for flood zone determination, certification and tracking services or (2) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

Borrower is to provide and deliver evidence of insurance to lender, which is to the satisfaction of Lender.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made

promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 21 or otherwise, Borrower hereby assigns to Lender (1) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (2) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration. Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause. Additionally, should Borrower be conducting illegal activity on or about the property, this shall constitute a breach under this security agreement.

7. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, fraudulent, misleading, misrepresentation, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

8. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (1) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (2) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (3) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to, (1) paying any sums secured by a lien which has priority over this Security Instrument, (2) appearing in court, and (3) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 8, Lender does not have to do so and is not under any duty or obligation to do so. The parties hereto agree that Lender incurs no liability for not taking any or all actions authorized under this Section 8.

Any amounts disbursed by Lender under this Section 8 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

9. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a nonrefundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 9 affects Borrower's obligation to pay interest at the rate provided in the Note.

10. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender. If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment

Case 20-50182    Claim 2-1 Part 2    Filed 02/20/20    Desc POC Part 2    Page 1 of 18

of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, foreclosure fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's Mailing Address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Mailing Address unless Borrower has designated a substitute notice address by notice to Lender.

Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower.

Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument. Borrower requests that a copy of any Notice of Default and any Notice of Sale hereunder be mailed to Borrower at the Mailing Address stated herein, unless Borrower has designated another address by Notice to Lender.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (1) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender, (2) words in the singular shall mean and include the plural and vice versa, and (3) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

In the event of sale or transfer, conveyance or alienation of said real property, or any part thereof, or any interest therein, whether voluntary or involuntary (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred), Beneficiary shall have the right of acceleration, at it's option, to declare the Note secured by the Deed of Trust, irrespective of the maturity date expressed therein, and without demand or notice, immediately due and payable. No waiver of this right shall be effective unless it is in writing. Consent by the Beneficiary to one such transaction shall not constitute waiver of the right to require such consent to succeeding transactions.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (i) five business days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (ii) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (iii) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, foreclosure fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer(s) and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

**20.  Hazardous Substances.** As used in this Section 20: (1) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (2) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (3) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (4) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup .

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (1) that is in violation of any Environmental Law, (2) which creates an Environmental Condition or (3) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (1) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge; (2) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (3) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup

NON UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21.  Default.** Upon default by Borrower in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee, Agent of Beneficiary or Agent of Trustee, of written declaration of default and demand for sale and of written Notice of Default and of election to cause to be sold the Property, which notice Trustee, Agent of Beneficiary or Agent of Trustee shall cause to be filed for record. Trustee, Agent of Beneficiary or Agent of Trustee shall be entitled to rely upon the correctness of such notice.

After the lapse of such time as then may be required by law following the recordation of said Notice of Default and Notice of Sale having been given as then required by law, Trustee or Trustee's Agent, without demand on Borrower, shall sell the Property at the time and place fixed by it in said Notice of Sale, either as a whole or in separate parcels and in such order as Trustee or Beneficiary may determine at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee, or Trustee's Agent may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, expressed or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person including Borrower, Trustee or Beneficiary as herein defined, may purchase at such sale. Trustor hereby waives any and all rights expressed or implied under California Civil Code Section 2924g(b). All junior lienholders shall be bound by this as well.

If the Mortgaged Property consists of several lots, parcels or items of property, Beneficiary may: (a) designate the order in which such lots, parcels or items shall be offered for sale or sold, or (b) elect to sell such lots, parcels or items through a single sale, or through two or more successive sales, or in any other manner Beneficiary deems in its best interest. Any person, including Trustor, Trustee or Beneficiary, may purchase at any sale hereunder, and Beneficiary shall have the right to purchase at any sale hereunder by crediting upon the bid price the amount of all or any part of the indebtedness hereby secured. Should Beneficiary desire that more than one sale or other disposition of the Mortgaged Property be conducted, Beneficiary may, at its option, cause the same to be conducted simultaneously, or successively, on the same day, or at such different days or times and in such order as Beneficiary may deem to be in its best interests, and no such sale shall terminate or otherwise affect the lien of this Deed of Trust on any part of the Mortgaged Property not sold until all indebtedness secured hereby has been fully paid. In the event Beneficiary elects to dispose of the Mortgaged Property through more than one sale, Trustor agrees to pay the costs and expenses of each such sale and of any judicial proceedings wherein the same may be made, including reasonable compensation to Trustee and Beneficiary, their agents and counsel, and to pay all expenses, liabilities and advances made or incurred by Trustee in connection with such sale or sales, together with interest on all such advances made by Trustee at the lower of the rate set forth in the Note, or the maximum rate permitted by law to be charged by Trustee.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with

Page 9 of 16

Case 20-50182    Claim 2-1 Part 2    Filed 02/20/20    Desc  POC Part 2    Page 4 of 18

the sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the rate prescribed in the Note; all other sums then secured thereby, and the remainder, if any, to the person or persons legally entitled thereto.

**22.    The Agreement is Binding.** This Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devises, administrators, executors, successors and assigns. The term "Beneficiary" shall mean the owner and holder, including pledgees, of the Note secured hereby, whether or not named as Beneficiary herein. In this Deed of Trust, whenever the contract so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural. As used herein, "fixtures" includes but is not limited to carpeting, built-in appliances, drapery and drapery rods, landscaping, water tanks, plumbing, machinery, air conditioners, ducts, and the like.

**23.    Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, and if the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24.    Grievances.** Neither Borrower nor Lender may commence, join, or be joined to any judicial action, except an appointment of a receiver and/or a judicial foreclosure (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 55.

**25.    Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law.

**26.    Multiple Lender Loans:** Pursuant to Civil Code Section 2941.9, if this Deed of Trust has more than one Beneficiary (Lender) with an undivided interest, it is subject to a signed agreement between all of the Lenders to be governed by the Lenders holding more than 50% of the record beneficial interest of this Deed of Trust. This may occur during escrow or after the close of escrow. Additionally, pursuant to Business & Professions Code Section 10238(i), the holders of more than 50% of the recorded beneficial interests of the notes or interests may govern the actions to be taken on behalf of all holders in accordance with Civil Code Section 2941.9 in the event of default or foreclosure for matters that require direction or approval of the holders, including designation of the broker, servicing agent, or other person acting on their behalf and the sale, encumbrance, or lease of real property owned by the holders resulting from foreclosure or receipt of a deed in lieu of foreclosure.

**27.    Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**28.    Senior Lien Information.** Lender may require information on any and all senior lien information from Borrower. Said request must be made in writing to Borrower. Borrower must submit the information to Lender within 20 days of the date of request. Said information can include, but is not limited to: name of senior lien holder, balance due, payment amount, next due date, address of lien holder, phone number of lien holder, loan number and amounts advanced.

**29.    Document Drawing Service.** If a document drawing service has been hired to draw loan documents, Borrower hereby agrees to indemnify and hold Document Drawing Service, its officers, agents and representatives harmless from and against any costs, expense (including, without limitation attorney fees, consulting fees and court costs).

**30.    Indemnification.** Borrower hereby agrees to indemnify (as the same are incurred or accrued) and hold Lender and its officers, agents, representatives harmless from and against any cost, expense (including, without limitation attorney fees, consulting fees and court costs), demand, claim or lawsuit arising out of or related to the Property or the Loan, including, but not limited to any claims made by contractors, suppliers, mechanics lien claimants, homeowner associations, governmental authorities, stop notice claimants, title companies or persons purporting to be injured on or by the Property or by the acts or conduct of Borrower, its contractors, subcontractors, suppliers and or other persons dealing with Borrower. If Borrower fails to provide such indemnity as the same accrues and as expenses

Page 10 of 16

Case 20-50182    Claim 2-1 Part 2    Filed 02/20/20    Desc POC Part 2    Page 5 of 18

are incurred, the amount not paid shall be added to the principal amount of the Note and bear interest thereon at the same rate then in effect (including any default rate in effect) and shall be secured by the same collateral as securing the Note and Loan Agreement.

31.     **Acceptance by Lender of Partial Payment After Notice of Default.** By accepting partial payment (payments which do not satisfy a default or delinquency in full), or any sums secured by this Deed of Trust after a notice of default has been recorded, or by accepting late performance of any obligation secured by this Deed of Trust, or by adding any payments so made to the loans secured by this Deed of Trust, whether or not such payments are made pursuant to a court order, Lender does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure to make any such payment promptly or to perform any such act. No exercise of any right or remedy of the Lender or Trustee under this Deed of Trust shall constitute a waiver of any other right or remedy contained in this Deed of Trust or provided by law.

32.     **Unsecured Portion of Indebtedness.** If any part of the secured indebtedness cannot be lawfully secured by this Deed of Trust, or if any part of the Property cannot be lawfully subject to the lien and security interest hereof to the full extent of such indebtedness, then all payments made shall be applied on said indebtedness first in discharge of that portion thereof which is unsecured by this Deed of Trust.

33.     **Waiver of Marshalling; Other Waivers.** To the extent permitted by law, Borrower waives (i) the benefit of all present or future laws providing for any appraisement before sale of any portion of the Mortgaged Property, (ii) all rights of redemption, valuation, appraisement, stay of execution, notice of election to mature or declare due the whole of the Indebtedness and marshalling in the event of foreclosure of the lien created by this Instrument, (iii) all rights and remedies which Borrower may have or be able to assert by reason of the laws of the State of California pertaining to the rights and remedies of sureties, (iv) the right to assert any statute of limitations as a bar to the enforcement of the lien of this Instrument or to any action brought to enforce the Note or any other obligation secured by this Instrument, and (v) any rights, legal or equitable, to require marshalling of assets or to require upon foreclosure sales in a particular order, including any rights under California Civil Code Sections 2899 and 3433. If the Mortgaged Property consists of several lots, parcels or items of property, Beneficiary may: (a) designate the order in which such lots, parcels or items shall be offered for sale or sold, or (b) elect to sell such lots, parcels or items through a single sale, or through two or more successive sales, or in any other manner Beneficiary deems in its best interest. Any person, including Trustor, Trustee or Beneficiary, may purchase at any sale hereunder, and Beneficiary shall have the right to purchase at any sale hereunder by crediting upon the bid price the amount of all or any part of the indebtedness hereby secured. Should Beneficiary desire that more than one sale or other disposition of the Mortgaged Property be conducted, Beneficiary may, at its option, cause the same to be conducted simultaneously, or successively, on the same date, or at such different days or times and in such order as Beneficiary may deem to be in its best interests, and no such sale shall terminate or otherwise affect the lien of this Deed of Trust on any part of the Mortgaged Property not sold until all indebtedness secured hereby has been fully paid. In the event Beneficiary elects to dispose of the Mortgaged Property through more than one sale, Trustor agrees to pay the costs and expenses of each such sale and of any judicial proceedings wherein the same may be made, including reasonable compensation to Trustee and Beneficiary, their agents and counsel, and to pay all expenses, liabilities and advances made or incurred by Trustee in connection with such sale or sales, together with interest on all such advances made by Trustee at the lower of the rate set forth in the Note, or the maximum rate permitted by law to be charged by Trustee.

34.     **125% TITLE INSURANCE POLICY.** Borrower agrees to allow Lender to obtain a title policy in an amount exceeding the face amount of the loan by 25% and instruct insuring title company of same. Lender and Borrower acknowledge this increase of coverage is not for the allowance of negative amortization of the principal balance. This additional coverage is to pay for losses the Lender may incur in a case which could increase the amount above the original principal balance coverage. Said losses could include delinquent interest, late charges, attorney fees, advances for insurance, taxes, etc. Borrower acknowledges this increase of coverage does result in a higher fee which Borrower shall bear for the Lender title insurance policy.

35.     **Property Assessed Clean Energy ("PACE") (or similar type program).** All Property Assessed Clean Energy ("PACE") (or similar type program) are prohibited. In the event that a PACE assessment/loan becomes a lien on the Property and becomes a part of the payment of property taxes or becomes senior to this Security Instrument in any way, Borrower shall be in breach of the note and this Security Instrument and Lender has the right to take all acts set forth in Security Instrument and to accelerate this Loan. The loan shall be in default and Lender may proceed under Section 21 of this Security Instrument.

36.     **SEVERABILITY; ENTIRE AGREEMENT; AMENDMENTS.** The parties intend that the provisions of this Instrument and all other Loan Documents, including the Promissory Note evidencing the indebtedness secured hereby, shall be legally severable. If any term or provision of this Instrument or any other Loan Document, including the Promissory Note evidencing the indebtedness secured hereby, be determined to any extent by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Instrument or of such other Loan Document, including the aforesaid Promissory Note, shall not be affected thereby and each term and provision shall be valid and be enforceable to the fullest extent permitted by law. This Instrument and the aforesaid Promissory Note contains the entire agreement among the parties as to the rights granted and the obligations assumed in this Instrument. This Instrument may not be amended or modified except by a writing signed by the party against whom enforcement is sought.

Case 20-50182    Claim 2-1 Part 2    Filed 02/20/20    Desc POC Part 2    Page 6 of 18

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____    5/8/19

PIERCE CONTRACTORS, INC., A CALIFORNIA CORPORATION, BY RICHARD PIERCE, CEO – Borrower
                                                                                      /Date

_____    5/8/19

– Co-Borrower    Richard Pierce                                                       /Date

---

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached and not the truthfulness, accuracy, or validity of that document.

State of California
County of _____ Yolo _____ )

On ___ May 8, 2019 ___ before me ___ Deborah Planet ___ Notary Public
                                        (insert name and title of the officer)

personally appeared ___ Richard Pierce ___
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct

WITNESS my hand and official seal

Signature _____    (Seal)

DEBORAH PLANET
Notary Public – California
Sacramento County
Commission # 2214550
My Comm. Expires Oct 14, 2021

Page 12 of 16

EXHIBIT "A"
Legal Description

For APN/Parcel ID(s):  712-04-100

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE UNINCORPORATED AREA IN COUNTY OF SANTA CLARA, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

PARCEL ONE:

A PORTION OF THAT PROPERTY SHOWN AS PARCEL "A" ON THAT PARCEL MAP FILED FOR RECORD IN BOOK 319 OF MAPS, AT PAGE 4, SANTA CLARA COUNTY RECORDS, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHERNMOST CORNER OF SAID PARCEL "A" AND PROCEEDING S. 41° 45' E., ALONG THE NORTHEASTERLY LINE OF SAID PARCEL "A" 241.08 FEET; THENCE S. 50° 37' W., 369.72 FEET TO A POINT ON THE SOUTHWESTERLY LINE OF SAID PARCEL "A" AS SHOWN ON SAID MAP; THENCE N. 39° 23' W., ALONG LAST SAID LINE 229.15 FEET TO A POINT ON THE NORTHWESTERLY LINE OF SAID PARCEL "A"; THENCE N. 48° 45' E., ALONG LAST SAID LINE 359.94 FEET TO THE POINT OF BEGINNING.

PURSUANT TO CERTIFICATE OF COMPLIANCE RECORDED AUGUST 17, 1990 AS INSTRUMENT NO. 10527538 OF OFFICIAL RECORDS.

PARCEL TWO:

AN EASEMENT FOR WATER PIPE LINE 10 FEET WIDE, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE NORTHWESTERLY LINE OF PARCEL 3, SAID POINT BEING ON THE NORTHEASTERLY LINE OF LANTZ AVENUE, AS SAID PARCEL AND AVENUE ARE SHOWN ON THE PARCEL MAP FILED ON AUGUST 25, 1972 IN BOOK 307 OF MAPS, AT PAGE 31, SANTA CLARA COUNTY RECORDS; THENCE ALONG SAID NORTHEASTERLY LINE OF LANTZ AVENUE, N. 39° 23' 00" W., 1164.43; THENCE S. 48° 45' 99' W., 10.00 FEET; THENCE S. 39° 23' 00" E., 1163.93 FEET; THENCE N. 51° 02' E., 10.00 FEET TO THE POINT OF BEGINNING.

PARCEL THREE:

AN EASEMENT FOR WATER PIPE LINE 10 FEET WIDE, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHEASTERLY LINE OF PARCEL B, SAID POINT BEING ON THE NORTHEASTERLY LINE OF LANTZ AVENUE, AS SAID PARCEL AND AVENUE ARE SHOWN ON THE PARCEL MAP FILED MARCH 20, 1973 IN BOOK 319 OF MAPS, AT PAGE 3, SANTA CLARA COUNTY RECORDS; THENCE N. 51° 02' E., 185.00 FEET; THENCE N. 38° 58' W., 10.00 FEET; THENCE S. 51° 02' W., 184.93 FEET; THENCE S. 39° 23' E., 10.00 FEET TO THE POINT OF BEGINNING.

# EXHIBIT 3

Debtor 1     Pierce Contractors, Inc.

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   Northern District of California

Case number   20-50182

## Official Form 410

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

SASSAN RAISSI, A SOLE INDIVIDUAL, AS TO AN UNDIVIDED, et al
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Law Offices of Edward T. Weber
Name

17151 Newhope Street, Suite 203
Number   Street

Fountain Valley     CA     92708
City     State     ZIP Code

Contact phone 657-235-8359

Contact email ed@eweberlegal.com

**Where should payments to the creditor be sent?** (if different)

Superior Loan Servicing
Name

7525 Topanga Canyon Blvd.
Number   Street

Canoga Park     CA     91303
City     State     ZIP Code

Contact phone 818-629-2272

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____    Filed on _____
                                              MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

Case 20-50182    Claim 2-1    Filed 02/20/20    Desc Main Document    Page 1 of 17

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No
☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: 4  2  3  7

**7. How much is the claim?**

$ _____1,614,709.91_____ . Does this amount include interest or other charges?

☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Real Estate Loan

**9. Is all or part of the claim secured?**

☐ No
☑ Yes. The claim is secured by a lien on property.

**Nature of property:**

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: _____

**Basis for perfection:** Recorded Deed of Trust

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property: $ _____

Amount of the claim that is secured: $ __1,614,709.91__

Amount of the claim that is unsecured: $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: $ _____156,083.43_____

Annual Interest Rate (when case was filed) __16.99__ %
☑ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☑ No
☐ Yes. Amount necessary to cure any default as of the date of the petition. $ _____

**11. Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: _____

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | | |
|---|---|---|---|
| | ☐ Yes. *Check one:* | | **Amount entitled to priority** |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | | $ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | | $ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | | $ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | | $ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | | $ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | | $ |

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:  Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  02/20/2020
                          MM / DD / YYYY

Edward T. Weber, Esq.
Signature

Print the name of the person who is completing and signing this claim:

| Name | Edward T. Weber | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Attorney | | |
| Company | Law Offices of Edward T. Weber | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 17151 Newhope Street, Suite 203 | | |
| | Number        Street | | |
| | Fountain Valley | CA | 92708 |
| | City | State | ZIP Code |
| Contact phone | 657-235-8359 | Email | ed@eweberlegal.com |

CREDITOR NAME:

SASSAN RAISSI, A SOLE INDIVIDUAL, AS TO AN UNDIVIDED 600,000/1,429,000 INTEREST; JERRY KIACHIAN, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY, AS TO AN UNDIVIDED 629,500/1,429,000 INTEREST; MOHSEN KEYASHIAN, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY, AS TO AN UNDIVIDED 200,000/1,429,000 INTEREST

# Mortgage Proof of Claim Attachment

(12/15)

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

## Part 1: Mortgage and Case Information

| | |
|---|---|
| Case number: | 20-50182 |
| Debtor 1: | Pierce Contractors, Inc. |
| Debtor 2: | |
| Last 4 digits to identify: | |
| Creditor: | SABDAN PASIL A SOLE INDIVIDUAL AS TO A |
| Servicer: | Superior Loan Servicing |
| Fixed accrual/daily simple interest/other: | 16.99 |

## Part 2: Total Debt Calculation

| | |
|---|---|
| Principal balance: | 1,429,000.00 |
| Interest due: | 161,858.07 |
| Fees, costs due: | 23,851.84 |
| Escrow deficiency for funds advanced: | |
| Less total funds on hand: | — |
| Total debt: | 1,614,709.91 |

## Part 3: Arrearage as of Date of the Petition

| | |
|---|---|
| Principal & interest due: | 141,625.82 |
| Prepetition fees due: | 14,457.61 |
| Escrow deficiency for funds advanced: | |
| Projected escrow shortage: | |
| Less funds on hand: | — |
| Total prepetition arrearage: | 156,083.43 |

## Part 4: Monthly Mortgage Payment

| | |
|---|---|
| Principal & interest: | 20,232.26 |
| Monthly escrow: | |
| Private mortgage insurance: | |
| Total monthly payment: | 20,232.26 |

## Part 5 : Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | Account Activity | | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | C. Funds received | D. Amount incurred | | | | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |

Official Form 410A      Mortgage Proof of Claim Attachment      page 1 of ___

Case 20-50182    Claim 2-1    Filed 02/20/20    Desc Main Document    Page 5 of 17



# SUPERIOR
## Loan Servicing™

*"Superior Service for Superior Clients"*
7525 Topanga Canyon Blvd.
Canoga Park, CA 91303
(818) 483-0027

2/14/2020

Pierce Contractors, Inc - FC BK 11
Richard Pierce
194 Lantz Drive
Morgan Hill, CA 95037

Borrower: Pierce Contractors, Inc - FC BK 11          Property: 194 Lantz Drive, Morgan Hill, CA
Richard Pierce                                        95037
Account:

## PAYOFF FOR DEFAULT PROCESSING

| Payoff Date | 1/31/2020 |
|---|---|
| Maturity Date | 6/1/2021 |
| Next Payment Due | 7/1/2019 |
| Interest Rate | 16.990% |
| Interest Paid-To Date | 6/1/2019 |
| Principal Balance | $1,429,000.00 |
| Accrued Interest From 6/1/2019 To 1/31/2020 | $161,858.07 |
| Accrued Late Charges | $14,162.61 |
| Unpaid Charges   *For additional details see itemization below* | $9,689.23 |
| **Payoff Amount** | **$1,614,709.91** |

Please add $674.41 per Diem

### ITEMIZATION OF UNPAID CHARGES

| Date | Description | Interest Rate | Unpaid Balance | Accrued Interest | Total Due |
|---|---|---|---|---|---|
| 05/30/2019 | Affordable Housing Recording Fee | 0.000% | $75.00 | $0.00 | $75.00 |
| 08/29/2019 | Default Processing fee (July & August) | 0.000% | $295.00 | $0.00 | $295.00 |
| 02/10/2020 | FC (I) good thru 2/3/20 $9,319.23 | 16.990% | $9,319.23 | $0.00 | $9,319.23 |
| | | | | Total | $9,689.23 |

Sincerely,
Kevin Sanchez
Loan Servicing Specialist
818-483-0027
TeamDM@slsbox.com

# LOAN REINSTATEMENT CALCULATION

**COMPANY**

Superior Loan Servicing
7525 Topanga Canyon Blvd.
Canoga Park CA 91303
(818) 483-0027

| ACCOUNT NO. | |
|---|---|
| STATEMENT DATE | 2/14/2020 |

**SUMMARY**

| | |
|---|---|
| Unpaid Installments | $141,625.82 |
| Accrued Late Charges | $14,162.61 |
| Unpaid Late Charges | $0.00 |
| Unpaid Charges | $295.00 |
| Unpaid Interest | $0.00 |
| **To Reinstate as of** | |
| **1/31/2020, Please Pay:** | **$156,083.43** |

Property: 194 Lantz Drive Morgan Hill CA 95037

**BORROWER**

Pierce Contractors, Inc - FC BK 11
Richard Pierce
194 Lantz Drive
Morgan Hill CA 95037

## ITEMIZATION OF UNPAID INSTALLMENTS

| Payment Due Date | Note Rate | Payment Amount | Principal | Interest | Apply To Trust | Other | Unpaid Interest | Unpaid Interest Balance | Principal Balance |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Balance Forward: | | | $0.00 | $1,429,000.00 |
| 7/1/2019 | 16.990% | $20,232.26 | $0.00 | $20,232.26 | $0.00 | $0.00 | $0.00 | $0.00 | $1,429,000.00 |
| 8/1/2019 | 16.990% | $20,232.26 | $0.00 | $20,232.26 | $0.00 | $0.00 | $0.00 | $0.00 | $1,429,000.00 |
| 9/1/2019 | 16.990% | $20,232.26 | $0.00 | $20,232.26 | $0.00 | $0.00 | $0.00 | $0.00 | $1,429,000.00 |
| 10/1/2019 | 16.990% | $20,232.26 | $0.00 | $20,232.26 | $0.00 | $0.00 | $0.00 | $0.00 | $1,429,000.00 |
| 11/1/2019 | 16.990% | $20,232.26 | $0.00 | $20,232.26 | $0.00 | $0.00 | $0.00 | $0.00 | $1,429,000.00 |
| 12/1/2019 | 16.990% | $20,232.26 | $0.00 | $20,232.26 | $0.00 | $0.00 | $0.00 | $0.00 | $1,429,000.00 |
| 1/1/2020 | 16.990% | $20,232.26 | $0.00 | $20,232.26 | $0.00 | $0.00 | $0.00 | $0.00 | $1,429,000.00 |
| | | $141,625.82 | $0.00 | $141,625.82 | $0.00 | $0.00 | $0.00 | | |

Case 20-50182    Claim 2-1    Filed 02/20/20    Desc Main Document    Page 7 of 17

Case: 21-50915    Doc# 26    Filed: 07/13/21    Entered: 07/13/21 17:26:17    Page 31 of 36

# EXHIBIT 4

**This document was electronically submitted to Santa Clara County for recording**

0214

**Regina Alcomendras**
Santa Clara County - Clerk-Recorder
06/21/2021 08:52 AM

Titles: 1      Pages: 2
Fees: $103.00
Tax:  $0
Total:  $103.00

RECORDING REQUESTED BY
**Asset Default Management, Inc.**

AND WHEN RECORDED MAIL TO:
**Asset Default Management, Inc.**
**7525 Topanga Canyon Blvd.**
**Canoga Park, California 91303**

SPACE ABOVE THIS LINE FOR RECORDER'S USE

T.S. No.                Loan No.: 1                APN:

# NOTICE OF TRUSTEE'S SALE

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 5/2/2019. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to a Deed of Trust described below.  The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below.  The amount may be greater on the day of sale.

Trustor: **PIERCE CONTRACTORS INC., A CALIFORNIA CORPORATION**
Duly Appointed Trustee: **SUPERIOR LOAN SERVICING**
Recorded **5/24/2019** as Instrument No.          8236 in book , page    of Official Records in the office of the Recorder of **Santa Clara** County, California,
Date of Sale: **7/19/2021 at 10:00 AM**
Place of Sale:      **At the Gated North Market Street entrance of the Superior Courthouse, 191 N. First Street, San Jose, CA 95113**
Amount of unpaid balance and other charges: **$2,117,029.61**
Street Address or other common designation of real property:      **194 LANTZ DRIVE**
**MORGAN HILL, CA 95037**

A.P.N.:
**"As Is Where Is"**

The undersigned Trustee disclaims any liability for any incorrectness of the street address or other common designation, if any, shown above. If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale.

NOTICE TO POTENTIAL BIDDERS: If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call (714) 730-2727 or visit this Internet Web site www.servicelinkASAP.com, using the file number assigned to this case 2019-00981. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

NOTICE TO TENANT: You may have a right to purchase this property after the trustee auction pursuant to Section 2924m of the California Civil Code. If you are an "eligible tenant buyer," you can purchase the property if you match the last and highest bid placed at the trustee auction. If you are an "eligible bidder," you may be able to purchase the property if you exceed the last and highest bid placed at the trustee auction. There are three steps to exercising this right of purchase. First, 48 hours after the date of the trustee sale, you can call (714) 730-2727, or visit this internet website www.servicelinkASAP.com, using the file number assigned to this case 2019-00981 to find the date on which the trustee's sale was held, the amount of the last and highest bid, and the address of the trustee. Second, you must send a written notice of intent to place a bid so that the trustee receives it no more than 15 days after the trustee's sale. Third, you must submit a bid so that the trustee receives it no more than 45 days after the trustee's sale. If you think you may qualify as an "eligible tenant buyer" or "eligible bidder," you should consider contacting an attorney or appropriate real estate professional immediately for advice regarding this potential right to purchase.

Date: 6/17/2021                    **SUPERIOR LOAN SERVICING, BY ASSET DEFAULT
                                   MANAGEMENT, INC. AS AGENT FOR TRUSTEE
                                   7525 Topanga Canyon Blvd.
                                   Canoga Park, California 91303
                                   Sale Line: (714) 730-2727**


                                   _____
                                   **Julie Taberdo, Sr. Trustee Sale Officer**

# EXHIBIT 5



To: Whom it May Concern:
RE: FUNDING
June 17, 2021

This letter will serve as a commitment to make a real estate loan secured by a first trust deed. The terms below are valid for 90 days from the date of this letter.

| | |
|---|---|
| Borrower: | Pierce Contractors Inc |
| Property: | 194 Lantz Drive, Morgan Hill CA |
| Loan Amount: | 1,137,500 |
| Term: | 24 Months |
| Interest Rate: | 10% |
| Origination Fees: | Three points |
| Underwriting and Processing Fee: | $650 |
| Prepayment Penalty: | Three months |
| Closing Date: | Within 3 days from receipt of full package |

Yosemite Capital LLC and/or its affiliate's offer to make the loan shall be made only by its submittal to escrow of its Real Property Loan Agreement and Escrow Instructions, executed by Lender.


If you have any questions, please feel free to contact me directly.

Sincerely,

Tom Malgesini
Managing Member
225 Marvin Ave.
Los Altos CA 94022
(650) 575-8186
tom@yosemitefinancial.com